
<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| CHAMBERS OF<br>JAMEL K. SEMPER<br>UNITED STATES DISTRICT JUDGE | FRANK R. LAUTENBERG<br>POST OFFICE AND COURTHOUSE<br>NEWARK, NJ 07101<br>973-645-3493 |
|---|---|

March 13, 2024

<u>VIA ECF</u>

### <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

Re:   **The Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund v. J. Supor & Son Trucking & Rigging Co., Inc.**
**Civil Action No. 22-03446**

Dear Litigants:

Before the Court is The Board of Trustees of the Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund's (the "Trustees" and "Fund," respectively) (together, "Plaintiffs"), Motion for Summary Judgment, (ECF 24.), pursuant to Federal Rule of Civil Procedure 56. J. Supor & Son Trucking & Rigging Co., Inc. ("Defendant" or "J. Supor") failed to file opposition to the motion despite numerous orders from the Court to respond to Plaintiffs.[1] The motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]

---

[1] Defendant was afforded numerous opportunities and *sua sponte* extensions from the Court over the course of eight (8) months to respond to Plaintiffs' motion for summary judgment. Defendant failed to file any opposition. Specifically, Plaintiffs first filed their motion for summary judgment in this matter on 7/28/2023. (ECF 24.) Defendant failed to file timely opposition. On 9/8/2023, Defendant failed to appear for a status conference before Magistrate Judge Kiel. As such, on 9/8/2023, Judge Kiel deemed Plaintiffs' motion for summary judgment as unopposed. (ECF 31.) On 12/29/2023, this matter was reassigned to this Court. (ECF 33.) On 1/23/2024, the Court issued a text order scheduling a telephone conference with the parties for 1/31/2024. (ECF 34.) On 1/31/2024, this Court instructed Defendant to file opposition by 2/21/2024. (ECF 36.) Defendant failed to file any opposition. On 2/27/2024, this Court scheduled another telephone conference with counsel for 3/4/2024, at which, Defendant Supor was in attendance. (ECF 38.) At the conference on 3/4/2024, this Court instructed Defendant and Defendant's counsel to file opposition by 3/11/2024 and indicated that if no opposition was forthcoming the Court would rule on the motion as unopposed. (ECF 39.) Defendant failed to file opposition on or before 3/11/2024. As a result, Defendant did not respond to Plaintiffs' Statement of Material Facts at ECF 28. *See* Fed. R. Civ. P. 56; L. Civ. R. 56.1. Because Defendant failed to address Plaintiffs' assertions of fact, the Court will grant Plaintiffs' motion for summary judgment if it is entitled based upon such factual assertions. *See* Fed. R. Civ. P. 56(e)(3); *see also Mendy v. Home Depot U.S.A., Inc.*, No. 19-00135, 2021 WL 2821189, *2 (D.N.J. July 6, 2021) (noting courts must still consider whether the party is entitled to judgment as a matter of law).

[2] Plaintiff's brief in support of its summary judgment motion will be referred to hereinafter as "Pl. Br." (ECF 25.)

The Court has considered the submissions and for the reasons set forth below, Plaintiffs' motion for summary judgment is **GRANTED**.[3]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[4]

J. Supor is a construction contractor. J. Supor agreed to contribute to the union drivers' multiemployer pension fund, the Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund. *J. Supor & Son Trucking & Rigging Co. v. Trucking Emps. of N. Jersey Welfare Fund*, 30 F.4th 179, 180 (3d Cir. 2022). On or about October 31, 2015, J. Supor withdrew from the Pension Fund. (ECF 28, Rule 56.1 Stmt., ¶ 15.) On or about July 20, 2017, the Pension Fund issued a Notice and Demand for withdrawal liability, requiring J. Supor to make monthly installments for payments of withdrawal liability to the Pension Fund commencing September 1, 2017. (*Id.* ¶ 16.) The Fund calculated J. Supor's withdrawal liability and by letter dated July 20, 2017, the Fund sent J. Supor a written demand for payment of its withdrawal liability, including a payment schedule according to which J. Supor was obligated to pay 178 monthly payments of $6,797.25 commencing September 1, 2017, plus a final payment of $6,679.92. (*Id.* ¶ 17.)

On or around December 20, 2017, J. Supor filed a complaint in this District contesting whether (i) J. Supor is an "employer" as defined by the MPPAA; (ii) whether J. Supor is compelled to arbitration, either under statutory or contractual obligations; and (iii) whether J. Supor is obligated to pay withdrawal liability. On October 9, 2020, Judge McNulty rejected J. Supor's claims and found J. Supor to be an "employer" pursuant to the MPPAA and therefore subject to withdrawal liability and the procedures and rules attached thereto. *J. Supor & Son Trucking & Rigging Co. v. Trucking Emps. of N. Jersey Welfare Fund*, No. 17-13416, 2020 WL 5988240, *5-6 (D.N.J. Oct. 9, 2020). J. Supor appealed the trial court's decision. On April 5, 2022, the Third Circuit upheld Judge McNulty's decision, finding J. Supor an employer under the MPPAA, and therefore subject to withdrawal liability and all the requirements thereof, including, but not limited to, arbitration of any defenses to the withdrawal liability findings and making withdrawal liability payments during the pendency of the arbitration. *J. Supor*, 30 F.4th at 183.

Plaintiffs in this action filed their Complaint against J. Supor on June 6, 2022. (ECF 1, Compl.) On July 28, 2023, Plaintiffs filed the instant motion for summary judgment. (ECF 24.)

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion

---

[3] When considering a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[4] The facts and procedural history are drawn from the Complaint, (ECF 1) ("Compl."), Plaintiff's Motion for Summary Judgment (ECF 24), Plaintiff's Brief in Support of their Motion for Summary Judgment (ECF 25), and Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts (ECF 28, "Rule 56.1 Stmt."), documents integral to or relied upon by the Complaint, and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.[5]

### B. Procedure where Motion is Unopposed

Where, as here, a party fails to address the other party's properly supported assertions of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. Local Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555, *3 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [the party's] evidence designated in or in connection with the motion entitle the [Movant] to judgment as a matter of law.'" (alterations in original) (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

### III. ANALYSIS

#### A. Withdrawal Liability

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), requires employers who withdraw from underfunded multiemployer pension plans to pay a "withdrawal liability." Withdrawal liability is a statutorily created liability wherein an employer is responsible for its allocable share of unfunded vested benefits after withdrawing from a plan. 29 U.S.C. §§ 1381(b), 1391(a). "An employer may discharge that obligation by making a series of periodic

---

[5] Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23) Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

payments according to a post withdrawal schedule set by the pension fund's trustees, or it may prepay the entire debt at any time." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 195 (1997). The MPPAA "places the calculation burden on the plan's trustees" and the trustees must demand withdrawal penalties "as soon as practicable" after the employer's withdrawal. *Id.* at 197; 29 U.S.C. § 1451(f). The MPPAA's "pay first, dispute later" policy requires the withdrawing employer to make interim payments to the pension fund pending any final resolution – either through arbitration or by a federal court. *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 508 (3d Cir. 1992) (holding that "ERISA's specific strong policy mandating immediate payment cannot be overridden by general notions that settlements should be accorded finality" and that until the District Court ruled on the enforceability of the settlement agreement, the employer was required to make interim payments to the pension fund); 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set for by the plan sponsor under subsection (b)(1) beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.")

The Pension Fund Withdrawal Liability Policy ("Withdrawal Liability Policy") grants Plaintiffs certain additional rights and responsibilities. (ECF 26-4, Ex. D.) In particular, the Withdrawal Liability Policy grants the Trustees the discretion to determine whether an employer is in "default" of its withdrawal liability obligations, and whether that employer's withdrawal liability should therefore be accelerated. (*Id.* ¶ 8(i) at 15) Specifically relevant here, the Withdrawal Liability Policy states:

> (i) In the event of a default, the Trustees may require immediate payment of (1) the outstanding amount of a Withdrawn Employer's withdrawal liability, (2) the interest due on withdrawal liability payments at a rate determined by the Trustees, (3) the greater of (a) accrued interest at rates based on prevailing market rates for comparable obligations on the total outstanding liability from the due date of the first payment which was not timely made or (b) liquidated damages in an amount Case not to exceed 20% of the outstanding liability (4) attorney's fees; and (5) all costs associated with collection.

(*Id.* ¶ 8(i) at 15-16.) Furthermore, "[a] default can also be 'any other event defined by the plan rules which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.'" *Miller v. ADCO Liberty Mfg. Corp.*, No. 04-3378, 2005 WL 2044901, *3 (D.N.J. Aug. 24, 2005) (first quoting *Bd. of Trs. of the Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp.*, 43 F.3d 852, 854 (3d Cir. 1994); and then quoting 29 U.S.C. § 1399(c)(5)(B)). Here, the plan rules found in the Withdrawal Liability Policy defines "default" as:

> (j)(a) The failure of an Employer to make, when due, any payment under this Section, if the failure is not cured within 60 days after the Employer receives written notification from the plan sponsor of such failure; and
>
> (j)(b) any other event that the Trustees deem to demonstrate a substantial likelihood that an Employer will be unable to pay its withdrawal liability.[6]

---

[6] A substantial likelihood that an employer will be unable to pay its withdrawal liability includes but is not limited to: (1) the Employer's insolvency, or any assignment by the Employer for the benefit of creditors; (2) the

(ECF 26-4, Ex. D. ¶ 8(j) at 16-17.) Here, Defendant has failed to make the monthly withdrawal liability payments starting with the payment for October 2021, which payment was due November 1, 2021, and has not made any payments since that time. (ECF 28, Rule 56.1 Stmt. ¶ 18.) Specifically, Plaintiffs notified Defendant via letter on January 10, 2022, that Defendant had failed to make its withdrawal liability payments, and informed Defendant that it had 60 days to cure its default and make the required withdrawal liability payments. (*Id*. ¶ 19.) Defendant failed to cure the default and on March 24, 2022, Plaintiffs' attorney sent a letter to Defendant further demanding payment of delinquent withdrawal liability payments in full, plus interest, to avoid further action, including litigation and acceleration. (*Id*. ¶ 22; ECF 27, Ex. L.)

On or around April 4, 2022, Plaintiffs officially voted to "accelerate" the monthly payments owed, resulting in an accelerated balance due of $433,812.75. [7] (ECF 28, Rule 56.1 Stmt., ¶ 23; ECF 25, Pl. Br. at 4.) While mere failure to make withdrawal liability payments is insufficient for a default that accelerates withdrawal liability during the pendency of an arbitration, the Plaintiffs can consider whether the Company is unable to pay its total withdrawal liability. *Cent. States Se. & Sw. Areas Pension Fund v. O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 773-74 (7th Cir. 2010). Plaintiffs' vote to accelerate was in accordance with their rights and responsibilities under the Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund Withdrawal Liability Policy. (ECF 26-4, Ex. D. ¶ 8(j)(b).) Specifically, Plaintiffs determined in its discretion that based upon Defendant's default on its withdrawal liability and failure to cure same, Defendant was not financially stable, its creditworthiness was materially impaired, and acceleration was necessary. (Rule 56.1 Stmt. ¶¶ 6, 13, 20); *Nat'l Pension Plan of Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc.*, No. 05-6138, 2006 WL 2051107 at *9 (S.D.N.Y. July 21, 2006).

Given J. Supor's undisputed failure to make its monthly withdrawal liability payments and its failure to "cure" its default (by, for example, tendering payment with respect to all its outstanding unpaid installments) within sixty (60) days of receiving notice of such failure, J. Supor defaulted on its withdrawal liability obligations to the Fund under ERISA and owes the entire outstanding balance of the remaining withdrawal liability payments. The Court sees no reason why the acceleration, liquidated damages, interest, and attorneys' fees provisions of the MPAA should not apply. The total principal amount owed is $883,480.67, plus interest running from November 1, 2021, the date the first delinquent payment was due. (Rule 56.1 Stmt. ¶ 33.) Based upon the foregoing, the Plaintiffs were within their rights and properly accelerated J. Supor's withdrawal liability per the Withdrawal Liability Policy.

---

Employer's failure or inability to pay its debts as they become due as determined by the Board of Trustees in their sole discretion; (3) any other event or circumstance which in the judgment of the Trustees materially impairs the Employer's creditworthiness or the Employer's ability to pay it withdrawal liability when due. (ECF 26-4, Ex. D., ¶ 8.j.b. at 16-17.)

[7] Defendant offered Plaintiffs $20,000 following the vote to accelerate the withdrawal liability. (Rule 56.1 Stmt. ¶ 27.) However, Plaintiffs deemed this payment insufficient, as it was an amount which was less than half of the principal amount of delinquent installment payments. Plaintiffs did not accept the payment as it did not satisfy the delinquency on the installment payments and because the full amount had already been accelerated. (*Id.* ¶¶ 27-28).

### B. Liquidated Damages, Attorneys Fees, and Costs

29 U.S.C. § 1451(b) provides that the failure to make a withdrawal liability payment is to be treated as a delinquent contribution within the meaning of 29 U.S.C. § 1145. *United Retail & Wholesale Emps. Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 134 (3d Cir.1986), *aff'd*, 481 U.S. 735, (1987). Thus, Plaintiffs action to recover withdrawal liability is treated as an action brought under Section 1145. 29 U.S.C. § 1132(g) provides that in any action brought by a pension plan to enforce Section 1145 in which a judgment is awarded in favor of the plan, the court must award interest on the unpaid contributions, reasonable attorneys' fees and costs, and the greater of either 20% of the unpaid contributions or an amount equal to the accrued interest. 29 U.S.C. § 1132(g). Such an award is mandatory. *See Yahn*, 787 F.2d at 134 ("§ 1132 made attorney's fees, costs and liquidated damages mandatory upon a judgment in favor of a pension plan"); *see also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Gotham Fuel Corp.*, 860 F. Supp. 1044, 1053 (D.N.J. 1993) (stating that "[a]n action to recover withdrawal liability is treated in the same matter as a delinquent contribution matter"). "Unpaid contributions, interest, and liquidated damages generally are considered 'sums certain' pursuant to the calculations mandated in ERISA and the parties' contractual agreements." *Trs. of the Teamsters Pension Tr. Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *4 (D.N.J. Mar. 23, 2011). "However, the reasonableness of the requested attorney's fees and costs is a matter that requires the Court to exercise discretion." *Id*.

Here, Plaintiffs present proof of damages through the affidavit of Robert Blumenfeld (the Fund Administrator), and the exhibits attached thereto. Mr. Blumenfeld certifies that the total principal owed is $883,480.67 plus interest running from November 1, 2021, the date the first delinquent payment was due. (ECF 26, Blumenfeld Decl. ¶ 20.) Pursuant to the Trust Agreement and the Withdrawal Liability Collection Policy, J. Supor owes the greater of additional interest on the principal or twenty percent (20%) of the remaining total amount owed. (*Id*. ¶ 22.) Further, Plaintiffs are statutorily entitled to seek damages in the form of reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D).

As such, and in accordance with local rule 54.2, Plaintiffs are instructed to file a separate application with updated calculations with respect to interest accrued, liquidated damages, and attorney's fees and costs, consistent with the above opinion.

### IV. CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment (ECF 24), is **GRANTED**.

/s/  *Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Parties
        Edward S. Kiel, U.S.M.J.